### 18367. MILLER *v.* THE STATE.

BROYLES, C. J. The evidence tending to connect the accused with the offense charged was wholly circumstantial, and was not sufficient to exclude every other reasonable hypothesis than that of his guilt. It follows that the refusal to grant a new trial was error.

*Judgment reversed. Luke and Bloodworth, JJ., concur.*

DECIDED NOVEMBER 16, 1927.

Indictment for making liquor; from Carroll superior court— Judge Maddox presiding. July 4, 1927.

Ben Miller was convicted of attempting to make intoxicating liquor. The sheriff testified: "I went to the home of Ben Miller. . . On his premises we found two barrels of beer, about 50 gallons each, . . about 250 yards from his home, and we found about 75 yards from there a still furnace and flake-stand . . in the pasture of Ben Miller; about 125 yards from his barn a still of about 50-gallon capacity. The still we found was not in the furnace; it was in some brush; . . looked like whisky had been made in it. . . The beer we found was hardly ripe for making whisky; I judge it would have been ready to run in two or three days. We found the flake-stand on the branch below where the gully run in where the beer was at, . . near the beer. . . There was travel back and forth across the field, man's tracks running from this defendant's house to where we found the beer. . . Ben was plowing that day. Where I saw the tracks the field was in cultivation; it hadn't been plowed right recently. . . I can't say who made those tracks. Ben's wife and children lived with him. . . His daughter was living there. Mr. Burns owns that place, has possession of it, and Ben lives with him. . . In the pasture we found a still, . . an old wooden box with a tin bottom in it. . . There was no mud in it at the time I got it; there was water in it; it looked like it had been some time since it was used, a long time. . . Found two barrels of beer in the gully, where the field runs right down to the edge of the gully. They cultivated all around it. There was brush over the beer; no thicket around there; it was an open place. That beer had been put up some time. . . That was hot weather. . . A number of people live around in that vicinity there; in

Criminal Law, 16 C. J. p. 764, n. 54; p. 1179, n. 67.
Intoxicating Liquors, 33 C. J. p. 758, n. 80, 87.

the east side Mr. Borders was about the closest. The flake-stand is a box which they use to put the worm in; . . we found no worm in there. We didn't find anything there except this box; I don't know what that was made for; it could have been used for a pig trough. . . Ben Miller said he cultivated the field right down to where we found this beer. . . We found the cap hid back up under some pine tops nearer the home of Ben Miller; . . the cap is what you put over the still; and we found the bumper keg. These articles were in the same gully the beer was, going east, in the direction of the defendant's home; . . as much in the direction of Borders' as it was Ben's. This furnace was . . an old furnace, . . not in use at that time." Another witness testified that the furnace looked as if it might have been used two or three weeks before. It was testified that a path led from the old still furnace to the defendant's house. There was evidence that at a previous time, when the defendant was living in another locality, barrels of beer were found on the premises. The defendant introduced witnesses whose testimony contradicted parts of the State's evidence. It was testified that another man lived and worked on the same place on which the defendant lived. The defendant, in his statement at the trial, said, that, until the sheriff found the still, he did not know anything about it; and that when the beer was found at the place where he formerly lived, he had just returned the night before from Atlanta, where he had been at work, and that he knew nothing about it.

*Smith & Taylor,* for plaintiff in error.

*W. Y. Atkinson, solicitor-general,* contra.